# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

LENA L. BERRY,                  )
                                )
         Plaintiff,             )
                                )
v.                              )  Case No. CIV-12-408-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
         Defendant.             )

## OPINION AND ORDER

Plaintiff Lena L. Berry (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on January 4, 1979 and was 32 years old at the time of the ALJ's decision. Claimant obtained her GED. She also completed some on-the-job technical training in outboard motor repair. Claimant has worked in the past as a boat mechanic helper, a clerical worker, a janitor, a cashier, a snack bar attendant, a home health aide, and a short order cook. Claimant alleges an

inability to work beginning July 18, 2009 due to limitations resulting from degenerative disc disease in her spine with related low back pain and pain radiating into her legs. She also asserts problems arising from migraine headaches, thyroid problems, irregular heartbeat, neck problems, shoulder pain, numbness in her arms and hands and related problems holding onto objects, a hiatal hernia, chronic urinary tract infections, bladder problems, and urethral problems, knee pain and swelling, swelling in her feet and ankles, sleep problems due to pain, medication side effects, depression, anxiety, concentration problems, memory problems, and problems being around people.

**Procedural History**

On July 23, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on July 224, 2009, she filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On December 9, 2010, an administrative hearing was conducted before ALJ Gene M. Kelly in Tulsa, Oklahoma. On May 5, 2011, the ALJ issued an unfavorable decision. On August 9, 2012, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final

decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) ignoring and rejecting the opinion of the state agency doctor regarding Claimant's mental functioning limitations; and (2) improperly rejecting the opinion of the consultative examining physician.

**Evaluation and Consideration of the Agency Physician**

In his decision, the ALJ found Claimant suffered from the severe impairments of the back, heart, hypertension, thyroid, depression, anxiety, kidney, hiatal hernia, stomach, feel, and obesity. (Tr. 12). The ALJ determined Claimant retained the RFC to perform sedentary work except that she could stand/walk for 2 hours in an 8 hour workday at one hour intervals, sit for 6 hours in an 8 hour workday at 2 hour intervals. She could only occasionally climb, bend, stoop, squat, crouch, kneel, and crawl.

5

She could only occasionally reach down and occasionally reach overhead. She could occasionally twist and nod her head. She had a slight limitation in fingering, feeling, and gripping, which meant that she could use her hands to work but she should not be required to use her hands for extensive amounts of small, tedious tasks with the hands and fingers, like working with nuts and bolts. She required a work setting with low light and noise, she should avoid extremes of cold and rough or uneven surfaces, unprotected heights, fast and dangerous machinery. Claimant should have easy access to restrooms.

Due to her depression and anxiety, Claimant was limited by the ALJ to simple and repetitive and routine work with an idea of limiting stress and content. He set forth that Claimant should have limited contact with the public and such contact should be only brief, cursory, and incidental. Claimant should also be limited in her contact with her co-workers and supervisors and such contact should only be brief, cursory, and incidental with enough space between Claimant and her co-workers that she does not have to interact with them socially. She should not be an integral part of a team that will participate in goal setting or process planning. The ALJ did not restrict normal or ordinary supervision.

Claimant was found to be afflicted by a variety of sources that produced mild to moderate chronic pain of sufficient severity to be

6

noticeable to her at all times but she was nevertheless able to remain attentive and responsive in the work setting and could carry out normal work assignments in a satisfactory manner. Claimant's medication was found to not preclude work at the sedentary level as she would remain reasonably alert to carry out normal work assignments. She would find it necessary to also alter position from time to time to relieve the symptomatology. (Tr. 15-16).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of clerical mailer, and semi-conductor assembler, both of which he found existed in sufficient number nationally and regionally. (Tr. 28). The vocational expert opined that the sit/stand option would be provided by a production facility based upon his knowledge of the job base and production facilities. (Tr. 29). The ALJ, therefore, concluded Claimant was not disabled. Id.

Claimant first contends the ALJ failed to properly consider the opinion of Dr. Phillip Massad, a consultative reviewing examiner. On November 17, 2009, Dr. Massad completed a Mental Residual Functional Capacity Assessment form on Claimant. He found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. (Tr. 353-55). In his assessment, Dr. Massad

7

determined that

> The clmt has sufficient concentration and memory to do simple, repetitive tasks but no detailed or complex tasks as evidenced by the clmt's functioning at MSE and ability to undertake a variety of everyday life demands. The clmt would be limited in the ability to work with the general public. The clmt could adapt to changes in a familiar environment. Clmt's reports are consistent with available evidence, and the evidence from different sources is not inconsistent.

(Tr. 355).

Claimant contends the ALJ rejected Dr. Massad's opinion without explanation when he did not include limitations found by Dr. Massad in his RFC. The limitation omitted included a marked limitation in the ability to carry out detailed instructions. The ALJ provided no explanation for rejecting Dr. Massad's opinion on this restriction. The Commissioner must give specific, legitimate reasons for rejecting the medical source opinion. Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988).

The jobs identified by the vocational expert in this case both involve an R2 reasoning level. DOT #209.587-010 (addresser); DOT #726.685-066 (bonder, semiconductor). An R2 reasoning level requires an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DOT, App. C. The ALJ may use a vocational expert

8

where the issue to be determined involves whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e). The ALJ, however, must correlate the vocational expert's testimony in an individual case with information contained in the DOT to serve as a basis for a denial of benefits. Haddock v. Apfel. 196 F.3d 1084, 1089 (10th Cir. 1999). In this case, the ALJ failed to explain the basis for rejecting Dr. Massad's limitation and, in so doing, the resulting error was not harmless when the questioning of the vocational expert did not encompass the totality of Claimant's limitations. On remand, the ALJ shall reassess Dr. Massad's opinion and the effect it has upon the RFC and the questioning of the vocational expert.

**Consideration of Dr. Gourd's Opinion**

Claimant also contends the ALJ did not properly evaluate the opinion of Dr. Johnson Gourd. Dr. Gourd provided a Medical Source Statement of Ability to Do Work-Related Activities (Physical) with regard to Claimant on January 8, 2011. (Tr. 428-33). Among Dr. Gourd's findings was a limitation in the use of Claimant's hands. Specifically, the ALJ found Claimant could only occasionally reach (overhead), reach (all other), handle, finger, feel, and push/pull. "Occasionally" is defined on the form as up to 1/3 of the day. (Tr. 430).

9

In his decision, the ALJ noted Dr. Gourd's opinion, including those limitations upon Claimant's hand use. (Tr. 26). However, he attributed the opinion only some weight, but not significant weight. In this regard, the ALJ specifically found

> Although Dr. Gourd's opinions are in some ways consistent with the undersigned ALJ's RFC findings, Dr. Gourd's report states the existence of information that was not furnished as evidence of record. Specifically, while Dr. Gourd noted that he had confirmed the claimant's subjective report of being declined for back surgery due to a 3 level disc involvement, the only consultation with a back surgeon on the record is found on Exhibit 3F. This single consultation made no mention of a conclusion about the claimant's surgical candidacy but indicated that the claimant should have a discogram and return to his office for further evaluation. No record concerning further evaluation was located in medical evidence of record.

(Tr. 26-27).

Claimant contends the ALJ violated his duty to develop the record by failing to re-contact Dr. David R. Hicks, Claimant's orthopedic surgeon. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an

adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993).

The ALJ should have re-contacted Dr. Hicks to determined whether he, in fact, did not recommend surgical intervention since this formed a basis for rejecting Dr. Gourd's opinion on limitation. The medical evidence became apparent in the hearing and yet the ALJ made no effort to obtain it. On remand, the ALJ shall ascertain whether Dr. Hicks made this recommendation and re-evaluate Dr. Gourd's opinions on Claimant's limitations on the use of her hands.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of

Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 20th day of March, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE